# No. 12-1802

### IN THE
# United States Court of Appeals for the Fourth Circuit

DR. MICHAEL JAFFÉ, AS INSOLVENCY ADMINISTRATOR
OVER THE ESTATE OF QIMONDA AG, I.IN.,

*Appellant*,

v.

SAMSUNG ELECTRONICS COMPANY, LTD., INFINEON TECHNOLOGIES AG, INTERNATIONAL BUSINESS MACHINES CORP., HYNIX SEMICONDUCTOR, INC., INTEL CORPORATION, NANYA TECHNOLOGY CORPORATION, AND MICRON TECHNOLOGY, INC.,

*Appellees.*

Appeal from the United States Bankruptcy Court
for the Eastern District of Virginia

**PETITION FOR REHEARING AND REHEARING *EN BANC***

Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2010

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

STATEMENT OF PURPOSE ...................................................................................1

INTRODUCTION .......................................................................................................1

BACKGROUND .........................................................................................................2

       A.     Chapter 15 ...............................................................................................2

       B.     Qimonda's Insolvency..............................................................................3

       C.     The Panel's Decision................................................................................5

REASONS FOR GRANTING THE PETITION .........................................................6

       A.     The Panel's Decision Undermines Congress's Objectives in
              Enacting Chapter 15 ................................................................................7

       B.     The Panel's Decision Undermines the Demanding Public Policy
              Standard in § 1506................................................................................10

       C.     The Panel's Decision Threatens Important U.S. Interests ...................11

       D.     The Panel's Reasons for Applying U.S. Law Are Not
              Persuasive ..............................................................................................12

CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980 (Fed. Cir. 2009) ................................................................................................ 15

*In re Condor Ins. Ltd.*, 601 F.3d 319 (5th Cir. 2010) ................................................ 12

*In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614 (Bankr. S.D.N.Y. 2010) ................. 9

*In re Vitro S.A.B. de C.V.*, 701 F.3d 1031 (5th Cir. 2012) ...................................... 14

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012) ................................................................................... 11

**STATUTES**

11 U.S.C. § 365(n) ............................................................................................... 3, 4

11 U.S.C. § 1501(a)(1) .......................................................................................... 2, 8

11 U.S.C. § 1506 ............................................................................................ *passim*

11 U.S.C. § 1508 ..................................................................................................... 12

11 U.S.C. § 1521 ....................................................................................................... 9

11 U.S.C. § 1522(a) ....................................................................................... *passim*

German Insolvency Code § 103 ............................................................................... 2

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 109-31 (2005) ........................................................................ 2, 5, 10

*International Bankruptcy Laws: Hearing Before the Subcomm. on Administrative Oversight and the Courts of the S. Comm. on the Judiciary*, 105th Cong. (Dec. 4, 1997) ............................................................. 12

## OTHER AUTHORITIES

Nat'l Bankruptcy Review Comm'n, Final Report, *Bankruptcy: The Next Twenty Years* (1997) ..................................................................................... 12

Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* (16th ed. 2013) ........................................................................................... 9, 10

UNCITRAL, *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* (2005) ..................................................................... 6, 13

Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 Am. Bankr. L.J. 713 (2005) ........................................................................... 7

**STATEMENT OF PURPOSE**

Appellant states that, in counsel's judgment, this proceeding involves the following question of exceptional importance:

Whether Chapter 15's "sufficient protection" requirement allows a bankruptcy court to deny comity merely because foreign law affords particular creditors less favorable treatment than U.S. law, or whether instead that requirement applies only where necessary to ensure that creditors may participate in a foreign insolvency proceeding on an equal footing.

**INTRODUCTION**

This case concerns a matter of exceptional importance under Chapter 15 of the Bankruptcy Code. Rejecting the position of the leading bankruptcy treatise, the panel ruled that Chapter 15's "sufficient protection" requirement allows a court to deny comity to a foreign insolvency proceeding merely because foreign law does not grant certain contracting parties the same special protections U.S. law does. That ruling threatens the international cooperation Congress sought to foster in Chapter 15; it defies the demanding standard for denying comity that Congress established elsewhere in the statute; and it invites retaliatory actions by other nations asked to respect U.S. law in a U.S. insolvency. The ruling also produces the bizarre result that a global patent cross-license between one German company

1

and another German company in German insolvency proceedings is governed by U.S. rather than German bankruptcy law. The Court should grant rehearing.

## BACKGROUND

### A. Chapter 15

Congress enacted Chapter 15 to promote "cooperation between . . . courts of the United States" and foreign courts in cross-border insolvencies. 11 U.S.C. § 1501(a)(1). Patterned on a U.N. Model Law the United States had a major role in developing, Chapter 15 requires courts to "grant comity or cooperation" to bankruptcy proceedings in other countries. *Id.* § 1509(b)(3). The statute thus contemplates that a debtor's assets will be distributed in a single proceeding under one body of law, with other countries' courts playing only a supporting role.

Chapter 15 contains only a narrow exception, for when foreign law is "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. That exception is "narrowly interpreted" and applies only to "the most fundamental policies of the United States." H.R. Rep. No. 109-31, pt. 1, at 109 (2005). Chapter 15 separately requires bankruptcy courts to ensure the interests of creditors and debtors are "sufficiently protected" before granting or modifying certain discretionary relief. 11 U.S.C. § 1522(a).

This case involves a difference between German and U.S. law over patent cross-licenses. Under Section 103 of the German Insolvency Code, such licenses

2

are treated the same way executory contracts are normally treated under both U.S. and German law: The trustee can either assume or reject the contract. Since 1988, however, U.S. law has contained a special exception in 11 U.S.C. § 365(n) that permits patent licensees to retain their rights.

### B. Qimonda's Insolvency

Headquartered in Munich, Germany, Qimonda AG was one of the world's largest semiconductor manufacturers. Panel Opinion ("Op.") at 4. In January 2009, it filed for insolvency in Munich. *Id.* Appellees—the "Objectors"—are most of the world's other leading semiconductor manufacturers. They each had patent cross-licenses with Qimonda or its predecessors. *Id.* at 12.

After Qimonda ceased operations, the Insolvency Administrator determined that the cross-licenses no longer benefited the estate (which had no use for reciprocal licensing rights). Accordingly, he invoked his authority under German law not to perform the contracts. Op. at 11. He offered to relicense the patents for cash royalties on reasonable and nondiscriminatory ("RAND") terms, determined by a WIPO arbitrator if necessary. *Id.* at 15. Licensees accepting the proposal would also be able to submit a claim for their losses and share in the estate distribution on an equal footing with other creditors. JA414 § 1.6.

The bankruptcy court refused to grant comity to German law, invoking both § 1522(a)'s sufficient protection requirement and § 1506's public policy exception.

3

Op. at 18-20. The court interpreted § 1522(a) broadly to require a "balancing analysis" that compared the costs to the estate of applying U.S. law against the costs to the licensees of applying German law. *Id.* at 18-19. The court perceived a "'very real' 'risk to the very substantial investment the [Licensees] . . . [had] collectively made in research and manufacturing facilities in the United States in reliance on the design freedom provided by the cross-license agreements.'" *Id.* at 18. Although the Insolvency Administrator's "offer to re-license Qimonda's patents on RAND terms would lessen the holdup risk," the court deemed that offer insufficient because the licensees no longer had "'the option of avoiding royalties altogether by designing around the patent.'" *Id.* at 18-19.

The district court authorized a direct appeal to this Court, finding that the case involved "a matter of public importance owing to both its legal and practical ramifications." *In re Qimonda AG*, 470 B.R. 374, 387 (E.D. Va. 2012). "[T]he central principle underlying chapter 15," it noted, "is that bankruptcy proceedings be governed in accordance with the bankruptcy laws of the nation in which the main case is pending, and comity should be extended in all but the narrowest of circumstances." *Id.* at 388. Accordingly, "this matter weighs the important protections of § 365(n) against the essential role of comity in Chapter 15 proceedings. Both are matters of ***substantial public importance***." *Id.* (emphasis added).

4

### C. The Panel's Decision

A panel of this Court affirmed. It recognized that this case presents a "significant question under Chapter 15." Op. at 4. And it declined to endorse the bankruptcy court's public policy holding. *Id.* at 42. But the panel ruled that the bankruptcy court had properly invoked the sufficient protection requirement.

The Insolvency Administrator urged that "§ 1522(a) is merely a procedural protection 'designed to ensure that all creditors [could] participate in the bankruptcy distribution on an equal footing' and thus should not be used to protect parties from the substantive bankruptcy law that would otherwise apply in the foreign main proceeding." Op. at 30 (emphasis omitted). "'[D]isregarding foreign law based on an open-ended balancing test under § 1522(a),'" he explained, "'is contrary to Chapter 15's basic design,' which . . . requires U.S. courts to defer to foreign substantive law *except* only as allowed under § 1506," the narrow public policy exception that applies where foreign law violates "'the most fundamental policies of the United States.'" *Id.* (quoting H.R. Rep. No. 109-31, pt. 1, at 109).

The panel conceded that the Insolvency Administrator's "theory of how the sufficient protection requirement of § 1522(a) operates is not illogical." Op. at 31. And it acknowledged that the statute is "somewhat ambiguous." *Id.* But the panel rejected his interpretation in favor of a much broader one.

5

Section 1522(a), the panel noted, "requires the bankruptcy court to ensure the protection of *both* the creditors and the debtor." Op. at 31. "[B]ecause the interests of the creditors and the interests of the debtor are often antagonistic," it reasoned, "[t]he analysis required by § 1522(a) is . . . logically best done by balancing the respective interests based on the relative harms and benefits." *Id.* The panel claimed support from the U.N. Model Law's *Guide to Enactment*, which directs courts to strike a "'balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief.'" Op. at 34 (quoting *Guide to Enactment* ¶ 161) (emphasis omitted).

The sufficient protection requirement, the panel concluded, "requir[es] a particularized balancing analysis . . . [involving] a weighing of the interests" of the debtor and other parties. Op. at 35. In conducting that balancing, a court may consider "the costs . . . impose[d] . . . by the substantive law of the State where the foreign insolvency proceeding is pending." *Id.*[1]

### REASONS FOR GRANTING THE PETITION

The panel adopted an expansive interpretation of Chapter 15's sufficient protection requirement that is directly contrary to the statute's basic objectives.

---

[1] The panel separately ruled that the Insolvency Administrator had requested discretionary relief in a manner that rendered § 1522(a)'s sufficient protection requirement applicable, Op. at 27-29, and that the bankruptcy court had not abused its discretion in applying the legal standard it endorsed, *id.* at 36-41.

6

The whole point of Chapter 15 was to replace the former "grab rule" regime, under which local courts applied local law to distribute local assets to local creditors, with a single unified proceeding applying the law of the jurisdiction where the debtor was located. Under the panel's approach, a local court can refuse to turn over local assets for coordinated distribution merely because local creditors would fare worse under foreign law.

That result stands Chapter 15 on its head. It is directly contrary to the interpretation of the leading bankruptcy treatise. And it ignores the demanding standard Congress established in § 1506's public policy exception. Nothing in the statutory text or the *Guide to Enactment* supports that result. That those sources contemplate a "balancing" of interests does not mean a court should attach weight to a party's "interest" in avoiding otherwise applicable foreign law. The "balancing" § 1522(a) contemplates is a balancing of the parties' *legitimate interests under Chapter 15's regime*. And because the whole point of Chapter 15 is to *grant comity to foreign law*, creditors and licensees have no legitimate "interest" in avoiding its application. The panel ignored that principle.

### A.   The Panel's Decision Undermines Congress's Objectives in Enacting Chapter 15

Historically, cross-border insolvencies proceeded according to the "grab rule," under which "each court in a country in which assets are found seizes them . . . and uses them to pay local creditors." Jay Lawrence Westbrook, *Chapter 15 at*

7

*Last*, 79 Am. Bankr. L.J. 713, 715 (2005). Chapter 15 was designed to reject that wasteful and inequitable piecemeal approach in favor of international coordination. *Id.* at 716. "[T]he central principle underlying chapter 15 is that ***bankruptcy proceedings be governed in accordance with the bankruptcy laws of the nation in which the main case is pending, and comity should be extended in all but the narrowest of circumstances***." *Qimonda*, 470 B.R. at 388 (emphasis added).

Chapter 15 thus mandates "cooperation between . . . courts of the United States" and foreign courts. 11 U.S.C. § 1501(a)(1). Courts *must* "grant comity or cooperation," *id.* § 1509(b)(3), subject only to a narrow exception for fundamental U.S. public policy, *id.* § 1506.

Section 1522(a)'s sufficient protection requirement must be interpreted in light of that broader statutory structure. The leading bankruptcy treatise adopts precisely that interpretation:

> *[Sufficient protection] is not intended to provide priority or preferential treatment to United States creditors, but is intended to assure that they are not prejudiced . . . beyond being subject to the same situation as creditors in the country in which the distribution will be made*. For example, if administrative costs of preserving the assets were incurred in the United States, the court should insure that they will be paid before releasing assets for distribution in another country. If United States creditors will not be able to file claims and, as a consequence, not participate in distributions, then the court should fashion a remedy for them or condition the release of assets on an appropriate accommodation from the foreign court.

8

8 *Collier on Bankruptcy* ¶ 1521.03 (16th ed. 2013) (construing 11 U.S.C. § 1521) (emphasis added). The goal of sufficient protection thus is to ensure that all creditors can participate in the foreign distribution on an equal footing—not to guarantee particular creditors more favorable treatment under U.S. law.

Prior decisions have interpreted the requirement that way. In *In re International Banking Corp. B.S.C.*, 439 B.R. 614 (Bankr. S.D.N.Y. 2010), for example, the court denied a Bahraini administrator's request to vacate attachments two banks had obtained. Vacating the attachments would not sufficiently protect the banks' interests, the court held, because the Bahraini court had not yet ruled on the attachments' validity under Bahraini law. *Id.* at 628. "The preferable course [wa]s to defer to the Bahraini court to resolve the issue, and then allow the prevailing party to return to this Court and ask that comity be afforded to the Bahraini court's decision." *Id.* The court thus properly applied the sufficient protection requirement to protect the banks' interests in participating on an equal footing under foreign law, not their interest in obtaining an advantage under U.S. law.

The panel here interpreted the sufficient protection requirement in the opposite manner. It did not deny that the Objectors and other licensees could participate in the German insolvency proceeding on an equal footing. The Insolvency Administrator's RAND offer term sheet expressly provided that licensees accepting the proposal could submit a claim for their losses and share in the estate with other

9

creditors. JA414 § 1.6. The Objectors would thus be treated precisely the same as Qimonda's other licensees and contracting parties in Germany.

The panel applied § 1522(a) nonetheless. It interpreted the sufficient protection requirement broadly to require that licensees of U.S. patents receive the more favorable treatment afforded by U.S. law. Far from ensuring equal treatment, that approach results in a preference for certain licensees over all other creditors in the German insolvency proceeding, including licensees of German or other patents. It is directly contrary to the approach endorsed by *Collier on Bankruptcy* quoted above. And it represents precisely the sort of "grab rule" mentality—application of U.S. law to U.S. assets, rather that deference to foreign law in a foreign proceeding—that Chapter 15 was designed to reject.

### B. The Panel's Decision Undermines the Demanding Public Policy Standard in § 1506

The panel's approach also defies the demanding standard Congress adopted in § 1506's public policy exception. That provision directly addresses when foreign substantive law should yield, permitting a court to deny comity only when application of foreign law would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. That exception is "narrowly interpreted" and applies only to "the most fundamental policies of the United States." H.R. Rep. No. 109-31, pt. 1, at 109.

10

The panel's interpretation of § 1522(a)'s sufficient protection requirement completely undermines that design. "Protecting" parties from the inherent consequences of foreign law is no different from refusing to apply foreign law. Chapter 15 authorizes courts to do that—but only when the stringent requirements of § 1506 are met. Disregarding foreign substantive law based on an open-ended balancing test under § 1522(a) ignores that structure.

It is a "well established canon of statutory interpretation" that "'the specific governs the general.'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012). "'[G]eneral language of a statutory provision, although broad enough to include [something], will not be held to apply to a matter specifically dealt with in another part of the same enactment.'" *Id.* at 2071. Here, Congress dealt specifically with conflicts in substantive laws in § 1506's public policy exception, and prescribed a demanding standard. That specific prescription supplies the governing rule.

### C.   The Panel's Decision Threatens Important U.S. Interests

The panel decision harms U.S. interests in several respects. The panel conditioned the Insolvency Administrator's right to administer U.S. patents in a German insolvency proceeding on preferential treatment for licensees under U.S. law. That mandate thwarts Chapter 15's objectives by preventing the distribution of Qimonda's estate in a single coordinated proceeding governed by one law.

11

"When courts mix and match different . . . bankruptcy law[s], the goals of any particular bankruptcy regime may be thwarted and the end result may be that the final distribution is contrary to the result that either system applied alone would have reached." *In re Condor Ins. Ltd.*, 601 F.3d 319, 326 (5th Cir. 2010).

Moreover, Congress enacted Chapter 15 in part to promote U.S. interests by encouraging foreign courts to grant comity to U.S. proceedings. *See International Bankruptcy Laws: Hearing Before the Subcomm. on Administrative Oversight and the Courts of the S. Comm. on the Judiciary*, 105th Cong. 6-9 (Dec. 4, 1997). Comity is important to the United States because U.S. law often departs from foreign standards, particularly in its permissiveness toward debtor-in-possession reorganizations. *See* Nat'l Bankruptcy Review Comm'n, Final Report, *Bankruptcy: The Next Twenty Years* 356 (1997). The Model Law encourages courts to rely on judicial decisions of other enacting jurisdictions in interpreting its provisions. *See* 11 U.S.C. § 1508. The panel decision will thus encourage foreign jurisdictions to deny comity to U.S. law, to the detriment of U.S. interests.

### D.     The Panel's Reasons for Applying U.S. Law Are Not Persuasive

None of the panel's reasons for applying U.S. law justified its holding. The panel reasoned that, because § 1522(a) "requires the bankruptcy court to ensure the protection of **both** the creditors and the debtor," whose interests are "often antagonistic," it "inherently call[s] for application of a balancing test." Op. at 31. The

12

panel drew the same inference from the reference to "balanc[ing]" in the Model Law's *Guide to Enactment*. Op. at 34 (quoting *Guide to Enactment* ¶ 161). Those observations, however, misunderstand the relevant issue.

The Insolvency Administrator does not deny that § 1522(a) requires a balancing of interests. The question is, *what* interests should be balanced? The central premise of Chapter 15 is that cross-border insolvencies should be resolved in a single proceeding governed by a single law—that of the debtor's home jurisdiction. Given that basic structure, parties do not have any legitimate "interest" in the application of some *different* country's laws. The bankruptcy court's mistake here was not that it "balanced" creditor and debtor interests, but that it struck that balance in favor of the Objectors based on their supposed "interest" in avoiding German law. That is not an appropriate "interest" to consider.

The panel also failed to grapple with the narrow public policy exception in § 1506. The panel cited the *Guide to Enactment* for the point that, "'*[i]n addition to [Article 22's] specific provisions*,' Article 6 . . . '*in a general way* provides that the court may refuse to take an action . . . manifestly contrary to the public policy of the enacting State." Op. at 34 (citing *Guide to Enactment* ¶ 36). But the fact that the sufficient protection requirement and the public policy exception coexist says nothing about what *interests* the sufficient protection requirement protects. If a mere desire for more favorable treatment under U.S. law were enough, no party

13

would ever need to invoke the public policy exception, and Congress's strict limitations on that exception would be meaningless.

The panel asserted that it was "join[ing] the Fifth Circuit, which interpreted § 1522(a) similarly, based largely on the language in the Guide to Enactment," as well as two district courts. Op. at 35-36. But the only sense in which those cases interpreted § 1522(a) "similarly" was that they likewise required a "balancing" of interests. *See, e.g.*, *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1060, 1067 n.42 (5th Cir. 2012). Again, that is not the issue. A court can balance interests under § 1522(a). What it may *not* do is balance a party's interests in having the estate distributed under some law other than the one Chapter 15 envisions.

Denying comity to German law makes particularly little sense on these facts. Many of the creditors harmed by the panel's denial of comity are based in the United States (including Qimonda's U.S. subsidiaries, which employed thousands of U.S. workers). JA1888. By contrast, most of the Objectors are not even U.S. companies. Two are based in Korea, a country that—like Germany—provides no special protections to licensees. *See* Opening Br. 38. And one of the Objectors is based ***in Germany***. *Id.*

Moreover, although the U.S. patents at issue may be U.S. property, the ***licensing agreements*** are not: Most are global cross-licenses covering patents in many jurisdictions. *See* Opening Br. 8 (citing licenses). As the bankruptcy court

14

recognized below, "a non-exclusive patent license conveys no property interest in the patent itself and 'is in essence nothing more than a promise by the licensor not to sue the licensee.'" *In re Qimonda AG*, 462 B.R. 165, 184 n.17 (Bankr. E.D. Va. 2011) (quoting *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 987 (Fed. Cir. 2009)). Under the panel's decision, one German company's personal promise of performance to another German company in German insolvency proceedings is now governed by U.S. rather than German law. That makes no sense. And it certainly is not the result Congress intended when it mandated comity in Chapter 15.

## CONCLUSION

The petition should be granted.

Dated: December 17, 2013          Respectfully submitted,

     /s/ Jeffrey A. Lamken
Jeffrey A. Lamken
Robert K. Kry
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2010

*Counsel for Appellant*

15

# **CERTIFICATE OF SERVICE**

I certify that today, December 17, 2013, the foregoing petition for rehearing and rehearing en banc was served by ECF on each of the following:

William H. Pratt
Jennifer M. Selendy
John P. Del Monaco
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Stephen E. Leach
LEACH TRAVELL BRITT, P.C.
8270 Greensboro Drive
Suite 700
Tysons Corner, VA 22102
(703) 584-8902

*Counsel for Samsung Electronics Co., Ltd., Infineon Technologies AG, and International Business Machines Corp.*

Jonathan Cohn
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8041

*Counsel for Nanya Technology Corporation*

John K. Roche
PERKINS COIE LLP
700 Thirteenth Street, N.W.
Washington, DC 20005
(202) 434-1627

*Counsel for Intel Corporation*

M. Jarrad Wright
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W.
Suite 900
Washington, DC 20005
(202) 682-7000

*Counsel for Micron Technology, Inc.*

Theodore G. Brown, III
KILPATRICK TOWNSEND &
    STOCKTON LLP
1080 Marsh Road
Menlo Park, CA 94025
(650) 324-6353

*Counsel for SK hynix Inc. f/k/a Hynix Semiconductor, Inc.*

                                                /s/ Jeffrey A. Lamken